## BOSWELL et al. v. STATE.

No. 10225—Opinion Filed June 7, 1921.

(Syllabus.)

### Intoxicating Liquors—Confiscation of Vehicles Used—Liability of "Scout Car."

A certain Ford sedan driven by one W. M. Boswell was seized by the sheriff of Cotton county, Oklahoma, under and by virtue of the prohibitory laws of the state. At the time of seizure, no liquors were found in the car. Boswell intervened, claiming ownership of the sedan. Upon trial the county court of Cotton county rendered judgment confiscating the sedan for reasons following, to wit: "The court finds that W. M. Boswell used a sedan car to aid, abet and assist some party, unknown to the court using a Davis automobile, to transport and convey 158 quarts of whisky from one place within Cotton county, Oklahoma, to another place within Cotton County, Oklahoma, by using the Ford sedan as what is commonly called the scout car to search out the road and see whether or not the officers of Cotton county were along this route intended to be traveled by said Davis automobile conveying said whisky." Held, (a) that the findings made by the trial court did not justify the judgment of confiscation; (b) that the legislative intent, as found in Session Laws of 1917, page 352, was to confiscate all vehicles, including automobiles, and all animals used in hauling or transporting any liquor in violation of the prohibitory laws; (c) and that said act cannot be construed to include a scout car used to search out the road and see whether or not the officers were along the road intended to be traveled by an automobile conveying whisky.

Error from County Court, Cotton County; J. C. Norman, Judge.

Proceedings by the State to confiscate one Ford sedan automobile under provisions of the prohibition law; W. M. Boswell, owner of the car, intervening. Judgment for the State, and intervener brings error. Reversed and remanded.

Charles H. Ruth, for plaintiffs in error.

E. L. Richardson, for defendant in error.

PITCHFORD, J.   This action was commenced in the county court of Cotton county, Oklahoma, by the seizure of one Ford sedan automobile by L. O. Watson, deputy sheriff of Cotton county, on March 15, 1918. The seizure was made without a warrant and for an alleged violation of the prohibitory liquor laws of the state of Oklahoma. On the same day and date, the officer making the seizure filed complaint in the county court, as provided by section 3617, Revised Laws of Oklahoma, 1910. Thereupon, the county judge of said county issued an order directing the sheriff to hold the property so seized until further orders of the court.

W. M. Boswell filed an interplea claiming the ownership of the sedan, and denied that said car was being used at the time of seizure, or had ever been used with the knowledge or consent of the intervener, for the purposes of violating the prohibitory laws of the state of Oklahoma, or of the United States.

Upon trial in the county court, judgment was rendered against the intervener. The car was confiscated to the state, and the sheriff was ordered to advertise and sell the same. From this judgment, the intervener appealed and assigned numerous errors—only one of which, however, is it necessary for us to consider; that is, error in not sustaining the motion filed by intervener for judgment in his favor upon the conclusion of all the evidence in the case.

It is admitted by the state, and the evidence clearly justified this admission, that no intoxicating liquors were found in the Ford sedan at the time of the search and seizure. The contention of the state is that the sedan was being used as a scout for the car in which the whisky was found. The judg-

ment of the court finding the sedan guilty contains the following clause:

"The court finds that W. M. Boswell used said car to abet and assist some party unknown to the court using a Davis automobile to transport and convey 158 quarts of whisky from one place within Cotton county, Oklahoma, to another place within Cotton county, Oklahoma, by using the Ford sedan as what is commonly called the scout car to search out the road and see whether or not the officers of Cotton county were along this route intended to be traveled by said Davis automobile conveying said whisky."

We are not informed either by the record or the brief on the part of the state by what method or means the Ford sedan was to communicate to the Davis car carrying the whisky any information gained by the sedan as to the dangerous proximity of the Cotton county officers along the route intended to be traveled by the Davis car.

The state has failed to furnish us with a single authority which in the least tends to sustain the contention that the sedan is subject to confiscation by being an aider and an abettor. We have been unable after diligent search, to find where this identical question has ever before been presented to any appellate court. We are able to understand how an individual can aid and abet an act, and how he can be accessory after the act, but this seems to be the original effort in attempting to make an automobile, driving on the public highway three-fourths of a mile away from the offending car, an aider and an abettor to the latter.

The evidence of the officers is that, when they first noticed the Ford sedan, the same was about three miles northeast of the bridge leading from the Texas to the Oklahoma line. When the sedan was seized nothing suspicious was found, except some gunny sacks and side curtains, but no evidence that the gunny sacks or side curtains gave forth the fast vanishing aroma that they had been used in any manner for the transportation or the concealing of liquors. While the officers were searching the sedan, the Davis car came from toward the south, and when within about three-fourths of a mile of the sedan it stopped and turned. The officers then abandoned the sedan and pursued the Davis car, which led them a merry chase for something like two and one-half miles—first in an easterly direction, then northeast, and then south in the direction of the bridge. The officers, realizing that in all probability the Davis car would beat them to the Texas line, resorted to the use of the telephone and instructed the keeper of the bridge to close the gates and not allow the Davis car to cross. The gates were closed. When the Davis car approached and found the gates closed, it came to a halt, it stopped, and like the fox pursued by the hounds, realizing that escape was impossible, ceased to make any further efforts and gave up in despair; the driver abandoned the Davis car, containing 158 quarts of whisky, jumped over the banisters and made his escape, and so far as the record discloses, the name of that driver is unknown to the officers of Cotton county even unto this day, and no one has been so poor as to assert ownership to the Davis automobile.

Boswell, the driver of the sedan, evidently became greatly interested in the race and followed in the wake of the officers. After the capture of the Davis car, when the officers were felicitating each other over their success, Boswell, the intervener, drove up. It appears this excited the suspicion of the officers; they remembered the gunny sacks; they remembered the side curtains; they looked with suspicion on the fact that Boswell turned back and followed them, and the arrest of Boswell and the seizure of the sedan followed.

The evidence points strongly to the guilt of Boswell. There seems to be no question but that he was interested in the whisky in the Davis automobile. The gatekeeper testified that the two cars crossed the bridge the evening before the seizure; that they were together; that they came back together the next day, the sedan being in the front; that the intervener, Boswell, was driving the sedan at the time, and that Boswell paid the toll for the two cars as they came over. The intervener also paid the toll for both cars on the 14th, the day before the seizure. On that occasion the Davis automobile was in front. But even if Boswell, the intervener, was the owner of the Davis automobile, and was guilty of transporting the liquor in the Davis automobile, that would not make the sedan guilty unless the sedan was also being used for the purpose of transporting the liquor.

The act of the Legislature, found in the Session Laws of Oklahoma, 1917, page 352, provides that:

"All vehicles, including automobiles, and all animals used in hauling or transporting any liquor the sale of which is prohibited by the laws of this state, from one place to another in this state in violation of the laws thereof, shall be forfeited to the state."

Prior to this act, an automobile used for the unlawful transportation of liquors was not subject to seizure and confiscation there-

for: First Nat. Bank of Roff et al. v. State, 72 Oklahoma, 178 Pac. 670.

The power conferred on officers to search and sieze, without a warrant, is given by virtue of section 3617, Revised Laws of Oklahoma, 1910. Section 3613, of the same, provides for the disposition of the property seized. We are heartily in favor of a strict enforcement of the law involved, the same as all other laws, and while it has been held by this court that the statute involved is highly penal. and must be strictly construed, we are inclined to the view that these statutes should be construed according to the fair import of their terms, with the view of making the intention of our lawmakers effective, and so as not to make futile the efforts of the officers charged with the arduous and difficult duty of enforcing the laws of the state, while so many are seeking by schemes various and cunning, to circumvent these laws. But we do not believe that the Legislature ever intended, by the act of 917, supra, to forfeit an automobile or other vehicle merely because the same man might have been the owner of the car containing the whisky as well as the car sought to be forfeited, when there was no whisky being transported in the latter car, notwithstanding the fact that the two cars were traveling the same highway.

We conclude that the court was in error in not sustaining the motion of the intervener for judgment in his favor; and it is, therefore, ordered that the judgment of the trial court be reversed, and the cause remanded, with instructions to sustain the motion of the intervener for judgment, and to restore the Ford sedan to the person entitled to the possession thereof.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.